State *v.* M'Gregor.

## STATE *v.* M'GREGOR.

41   407
66   85

Want of addition in an indictment can only be taken advantage of by a motion to quash, or a plea in abatement, upon arraignment; the defect is cured by a general appearance and plea of not guilty.

An indictment for keeping a bawdy house, respects not the ownership, but the criminal management of the house; and, therefore, evidence that

---
State *v.* M'Gregor.
---

the defendant went and procured a woman to come from a distance and live in the house during the period of the alleged nuisance, is competent, as having some tendency to prove him to have had the management of the house; and it is wholly immaterial whether as principal, or as the agent or servant, and by the command of another.

The nuisance in such case consists in drawing together dissolute persons engaged in unlawful practices, thereby endangering the public peace and corrupting good morals; the gist of the offence is the keeping or managing such a house to the public injury; and evidence that notoriously reputed prostitutes and libertines were in the habit of frequenting the house during the period laid in the indictment, has a direct tendency to establish its offensive character and the guilt of the respondent, if it was managed or controlled by him at the time.

Most crimes, committed by several, are in law perpetrated by them severally as well as jointly; and one present, aiding and abetting, and for the purpose of aiding and abetting in the commission of a crime, is guilty, as principal, of that crime.

INDICTMENT, for keeping a disorderly house; a copy of the indictment being a part of the case.

After the defendant had pleaded not guilty, and a jury had been impanelled and a witness sworn, the defendant moved to quash the indictment for defect in omitting the addition of the defendant's estate, degree, or mystery. The court overruled the motion, and the defendant excepted.

The State introduced evidence, subject to the defendant's exception, that during the time mentioned in the indictment the defendant went to Nashua and procured a woman to go to Manchester and live in the house mentioned in the indictment.

Subject to the defendant's exception, witnesses were allowed to testify to the reputation of persons visiting said house, and that men of bad reputation visited said house during said time.

The court instructed the jury that the defendant might be convicted, although he kept the house jointly with another person; and that he might be convicted, although he did not himself keep the house, either alone or jointly

State *v.* M'Gregor.

with another, if he continued present aiding and abetting, and for the purpose of aiding and abetting the keeper of it in committing the offence charged, during the time necessary to constitute the offence. To these instructions the defendant excepted; and, a verdict being returned against him, he moved to set it aside and for a new trial, which motion was overruled by the court; and the defendant excepted.

The defendant also moved in arrest of judgment for want of said addition. The court overruled the motion, and the defendant excepted and filed his bill of exceptions.

### INDICTMENT.

STATE OF NEW-HAMPSHIRE. HILLSBOROUGH ss.—At the trial term of the Supreme Judicial Court, holden at Amherst, within and for the county of Hillsborough aforesaid, on the first Tuesday of September, in the year of our Lord one thousand eight hundred and sixty:

The grand jurors for the State of New-Hampshire, upon their oath present, that James M'Gregor, of Manchester, in the said county of Hillsborough, on the first day of January, in the year of our Lord one thousand eight hundred and sixty, at Manchester aforesaid, in the county aforesaid, and on divers other days and times between that day and the twenty-second day of June, now last past, a certain common, ill-governed, and disorderly house then and there unlawfully did keep and maintain, and in the said house, for his own lucre and gain, certain persons, as well men as women, of evil name, fame, and conversation, to come together, on the days and times aforesaid, there unlawfully and wilfully did cause and procure, and the said persons, in the said house, at unlawful times, as well in the night as in the day, on the days and times aforesaid, there to be and remain drinking, whoring, and otherwise misbehaving themselves, unlawfully did permit and still doth permit, to the great damage and common nuisance of all the peace-

---
State *v.* M'Gregor.
---

able citizens of said State there residing, inhabiting, and passing, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State. 　　　　　　　　A. F. STEVENS, *Solicitor.*

This is a true bill:

ELI SPALDING, *Foreman of the Grand Jury.*

*I. A. Eastman* and *B. P. Cilley*, for the defendant.

1. The objection to the indictment was well taken. By the practice of the courts in this State, however it may be elsewhere, a motion to quash for defects apparent upon the record may be made at any time before evidence is laid before the jury. Such motions are favored, as being more direct than pleadings in abatement. In *Pettengill* v. *McGregor*, 12 N. H. 180, a motion to quash was made, as in this case, at the commencement of the trial, and although it was argued that the motion came too late, it was entertained by the court.

2. The evidence that the defendant went to Nashua to procure a woman to live in the house, was irrelevant, and, being excepted to, ought not to have been admitted. It was calculated to prejudice unfavorably the minds of the jury, and the ruling admitting it was erroneous.

3. It was error to admit the evidence as to the reputation of the persons visiting the house. That the house was a disorderly one was a matter to be proved as an existing fact, and could not be shown by evidence of its reputation. 3 Gr. Ev. 186; *Commonwealth* v. *Stewart*, 1 Serg. & R. 342; *Commonwealth* v. *Hopkins*, 2 Dana 418. Still less could it be shown by evidence as to the reputation of persons visiting the house.

4. The instructions to the jury that the defendant might be convicted, although he kept the house jointly with another person, were erroneous. To justify such instructions, the indictment should have been for a *joint* occupation.

State *v.* M'Gregor.

5. The motion in arrest should have prevailed. The error was apparent upon the record.

*A. F. Stevens*, solicitor, for the State.

1. The want of addition is defect of form only, and must be pleaded in abatement. Comp. Stat. 198, sec. 10. The motion to quash came too late. If the defendant appear and plead not guilty, the defect is of no importance. 1 Ch. Cr. L. 204, 299, and note, 300, 301. In the case of *Pettengill* v. *McGregor*, cited for the defendant, the court did not pass upon the question of time; and the motion was made at the commencement of the trial. In this case it was made while the trial was proceeding.

2. The procurement of a person to go and remain in the house is a substantial fact, competent to be proved; as much so as the occupation of the house by the defendant. It tends to prove the keeping and occupation, as well as the character of the house. Roscoe Cr. Ev. 795, 796.

3. It was competent to show the class of persons that visited the house. Disorderly houses may be proved by general reputation. Roscoe Cr. Ev. 794, note 2, and cases there cited.

4. The ruling of the court as to the joint keeping was correct. It is clear that there is nothing in the nature of the offence charged, to distinguish it from assault, larceny, or robbery, in this respect.

FOWLER, J. The motion to quash for want of addition, after plea of not guilty pleaded, and the jury had been impanelled and sworn, as also the motion in arrest of judgment, were properly denied.

Regularly, the name and addition of every party indicted ought to be truly inserted in the indictment; but, if one be indicted by a wrong Christian or sir name, or addition, and he plead to that indictment not guilty, or answer to it by that name on his arraignment, he shall not be received

afterward to plead misnomer or falsity of his addition, for he is concluded and estopped by his plea by that name; and of that estoppel the jailer and sheriff, that do execution, shall have advantage. Therefore, he that will take advantage of the misnomer of his Christian name, sir name, or addition, must do it by motion to quash, or plea in abatement, on his arraignment; and the entry must be special. So, if there be no addition, yet, if the party appear and plead not guilty, without taking advantage of that defect, he shall never allege the want of addition to stop his trial or judgment; for, by his appearance and pleading to issue, the indictment is affirmed, the want of addition saved, and the statute satisfied. 2 Hale P. C. 175, 176; 2 Rolle 50, 88; Cro. Eliz. 148, 198, 249, 609; Foster 16; Bac. Abr., Indictment, G, 2; Hawkins, b. 2, c. 34, s. 4; William's Justice, Misnomer & Addition, II.; 1 Ch. Cr. Law 204, 299, 300, 301, 447; Wharton Cr. Law 242; *Rex* v. *Rockwood,* Holt 683; 4 State Trials 677; *Winzorpflin* v. *State,* 7 Blackf. 186.

The evidence to show that, during the period mentioned in the indictment, the defendant went to Nashua and procured a woman to go to Manchester and live in the house mentioned in the indictment, was properly admitted, inasmuch as it had some tendency to show that the defendant had the management of the house; and it was wholly immaterial whether as principal, or as the agent or servant, and by the command of another, since the charge in the indictment does not respect the ownership, but the criminal management of the house. *Regina* v. *Pierson,* 1 Salk. 382; S. C., 2 Ld. Raym. 1197; 2 Ch. Cr. Law 39, note; 3 Gr. Ev., sec. 186; *State* v. *Bell,* 5 Post 365; *State* v. *Mathes,* 1 Hill (S. C.) 37; *Regina* v. *Williams,* 1 Salk. 384; 2 Rolle 345; 3 Keble 34; 1 Keble 575.

So, too, with the evidence as to the character and reputation of the persons visiting the house in question during the period mentioned in the indictment; it seems to us to

have been clearly admissible. One allegation of the indictment was that the defendant, for his own lucre and gain, did cause and procure certain persons, as well men as women, of evil name, fame, and conversation, to come together in said house within the period mentioned, and unlawfully permit them to be and remain there, drinking, whoring, and otherwise misbehaving themselves, at unlawful times, as well in the night as the day, to the common nuisance, &c. The nuisance consists in drawing together dissolute persons engaged in unlawful and injurious practices, thereby endangering the public peace and corrupting good morals. The gist of the offence is the keeping or managing such a house to the public detriment, and, under a general charge, particular instances may be proved. That notoriously reputed prostitutes and libertines were in the habit of frequenting the house during the time laid in the indictment, had a direct tendency to support the allegations of the indictment and establish the guilt of the defendant, if the house were managed or controlled by him at the time; *Commonwealth* v. *Kimball,* 7 Gray 328; where, upon an indictment for keeping a bawdy house, it was expressly holden, in the language of the head note, that the character of women frequenting the house, and the character of their conversation in the house, were competent evidence against the keeper of the house. *Rex* v. *Higginson,* 2 Burr. 1233; *J'Anson* v. *Stewart,* 1 D. & E. 754; *Clarke* v. *Periam,* 2 Atk. 339; 2 Ch. Cr. Law 39, note; 3 Ch. Cr. Law 671. *State* v. *Bailey,* 21 N. H. 343, to a ruling in which, at *nisi prius,* we have been referred in the argument, it will be seen, upon examination, was not an indictment for keeping a bawdy house.

That persons jointly guilty of crimes may be separately indicted and convicted; in other words, that most crimes committed by several are in law perpetrated by them severally as well as jointly, is too elementary a principle to need an argument or the citation of authorities to support

it; as is also the principle involved in the other branch of the instructions objected to, that one who is present, aiding and abetting, and for the purpose of aiding and abetting in the commission of a crime, is guilty, as principal, of that crime.

With these views of the correctness of the rulings and instructions in the court below, the objections taken thereto must be overruled.

*Exceptions overruled.*