## HARWOOD a. THE PEOPLE.

### Court of Appeals ; March Term, 1863.

EVIDENCE.—INDICTMENT FOR KEEPING BAWDY-HOUSE.

Upon the trial of an indictment for keeping a bawdy-house, it is admissible, in order to prove the character of the house kept by the defendant, to show that notorious prostitutes were found frequently there. Hence, evidence that women were arrested there, and taken before a magistrate, and convicted as such, is proper.

For the purpose of fixing knowledge upon the defendant of the character of the inmates of his house, it is proper to show that he knew of these charges against them. Hence, evidence that he became bail for them is proper.

Evidence that the defendant had, on a previous charge, been arrested on a warrant, and that after that time he kept the women who were shown to be prostitutes concealed in his house, is proper.

What is a sufficient charge, in an indictment, of keeping a bawdy-house.

Error to the Supreme Court.

DAVIES, J.—The indictment charged the plaintiff in error with keeping a bawdy-house. It was proven that he kept a house in the city of Syracuse, and to make out the offence it was necessary to establish the character or kind of house so kept by him. A bawdy-house is defined to be a house of ill-fame, kept for the resort and unlawful commerce of lewd people of both sexes. (1 *Bouvier L. Dict.*, 163.) It was essential therefore for the prosecution to establish the character

Harwood *a.* The People.

of the house, and, to show that, the characters of the persons frequenting it or resorting to it. The questions put to the witnesses, and objected to, only called out the fact that females were found in the house, and were taken from there before a magistrate, and convicted as prostitutes, and punished as such. This was *prima-facie* evidence of the character of the persons frequenting the plaintiff's house, and was legitimate and proper evidence to establish such character. Proof that prostitutes were found frequently at plaintiff's house, and these notoriously so, were circumstances bearing directly on the issue whether the plaintiff kept a bawdy-house, or house of ill-fame; and the jury would be warranted in finding, as they did, from such circumstances, and the additional one that convicted and notorious prostitutes were frequently arrested there, that he kept a house of that character. The materiality of the inquiry did not consist in the fact that arrests of such women were made in the plaintiff's house, but in the fact that women of such character were frequently found there, and permitted there, after their arrest and conviction as prostitutes. The inquiry as to the agency of the plaintiff in procuring bail for them, when arrested upon such charges, was eminently legitimate, as tending to show his knowledge of the character of the women occupying and frequenting his house. A man careful of the reputation of his house, and regulating it upon correct principles, is not accustomed to have found there women notoriously charged with the offence of prostitution; and, for the purpose of fixing on the plaintiff the knowledge of the character of the inmates of his house, and as their character and habits determined the kind and character of the house he kept, it was proper to show that he knew of these charges against them, and that such knowledge was evidenced by his becoming bail for them before the police magistrates.

The time of making the arrests was of no materiality, except as indicating the presence in the plaintiff's house of women of the character his inmates were found to be; and the time when they were thus found to be there was a material inquiry, and in this respect the questions as to time of making the arrests, and when last made, were properly allowed to be put.

In the view we take of this case, and the facts necessary to be established by the prosecution to warrant the jury in con-

victing the plaintiff, the judge correctly told the jury that the frequent arrests at the plaintiff's house of females theretofore. convicted as prostitutes was a circumstance proper to be taken into consideration by the jury in making up their verdict. It was not the fact that such females were frequently arrested in the plaintiff's house which gave point and significance to this part of the charge, but the fact that females theretofore con-victed as prostitutes were frequently found in the plaintiff's house. The fact of such conviction stamped them as prosti-tutes, and its notoriety and the circumstances of such frequent arrests must have brought home to the plaintiff knowledge of their character. The character of the inmates of the plaintiff's house determined the kind of house he kept; and if it was fre-quented by prostitutes notoriously so, and they were frequently arrested there by police officers, the jury were authorized to find it was a bawdy-house, or house of ill-fame.

We see no error in the admission of the evidence objected to, or in that part of the charge excepted to, and think the judg-ment should be affirmed.

ROSEKRANS, J.—The objection to the indictment was not well taken. A bawdy-house has been defined to be "a house of ill-fame, kept for the resort and commerce of lewd people of both sexes." The plaintiff in error was charged in the indictment with keeping such a house unlawfully and for filthy lucre and gain, receiving in such house divers men and women, who, by his consent and procurement, did commit whoredom and forni-cation therein, to the common nuisance of the People of the State. These allegations are sufficient to constitute a charge of keeping a bawdy-house.

It was also competent for the public prosecutor to prove that women who were in the house were arrested as prostitutes, to the knowledge of the accused, and that he interested himself to procure bail for them, in connection with evidence that the women were known and had been convicted as prostitutes. Though the charge in the indictment is general, evidence may be given of particular facts, tending to show the character of the house, and the knowledge of the accused that the women arrested were prostitutes. (*Rosc. Cr. Ev.*, 796.)

The court also properly allowed the warrant for the arrest of

the defendant under the charge of keeping a bawdy-house to be proved. It appeared that the arrest was made in September, 1861; and it was shown that after that time the accused kept the girls who were shown to be prostitutes in his house, concealed there at times when the officers came to arrest them, and gave bail for them. This evidence tended to show knowledge by the accused that the girls were prostitutes.

The court properly charged the jury that the frequent arrest of females at the house of the accused, who had previously been convicted as prostitutes, was a circumstance to be taken into consideration by the jury. The fact that prostitutes were found at the house of the accused, and were arrested there, tended to prove that the house was a bawdy-house.

The judgment should be affirmed.

WRIGHT, MARVIN, and BALCOM, JJ., concurred.

DENIO, Ch. J., could not see how the fact that a warrant upon a previous charge had been issued against the plaintiff in error was admissible. He, together with SELDEN and EMOTT, JJ., dissented.

Judgment affirmed.

---

## CHAMBERS *a.* LEWIS.

*Court of Appeals ; September Term,* 1863.

CONVERSION.—DEMAND AND REFUSAL.—MANUFACTURING CORPORATION.—LIABILITY OF STOCKHOLDERS AND TRUSTEES.—SHERIFF'S SALE.—BONA-FIDE PURCHASER.—FRAUDULENT TRANSFERS.—CHANGE OF POSSESSION.

In pleading the liability of a stockholder under the Laws of 1848, ch. 40, § 10,— which provides that stockholders, in manufacturing corporations allowed to be formed by that act, shall be liable, in case the capital is not paid in, for debts of the company, in an amount equal to the amount of stock held,—it must be