STATE OF CONNECTICUT *v.* ORONZO A. MALENA

FILE No. CR 14-46155

STATE OF CONNECTICUT *v.* ALBERT J. MALENA

FILE No. CR 14-46156

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued April 17—decided September 8, 1967

*Joseph F. Skelley, Jr.,* of Hartford, for the appellants (defendants).

*John J. Devine, Jr.,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J.   Identical issues are involved in these appeals.  They were argued together and may be disposed of in a single opinion.  In each case, there was a conviction under both § 53-226 and § 53-230 of the General Statutes.[1]  Both defendants have assigned error in the court's ruling on certain claims of law; in certain rulings on evidence; in certain conclusions; and finally in the court's conclusion that on all the evidence the defendants were guilty of the crimes charged beyond a reasonable doubt.   At the commencement of the trial, it was stipulated that the defendant Oronzo Malena was the permittee, and his brother, the defendant Albert Malena, was the backer, at the premises known as Al's Music Bar, located at 107 Albany Avenue in

---

[1] "Sec. 53-226.   PROSTITUTION; LEWDNESS; ASSIGNATION.   As used in this section, 'prostitution' includes the offering or receiving of the body for sexual intercourse for hire and the offering or receiving of the body for promiscuous sexual intercourse without hire, 'lewdness' includes any indecent or obscene act and 'assignation' includes the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement. Any person who receives, or offers or agrees to receive, any person into any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation or permits any person to remain there for such purpose . . . [shall be punished]. . . ."

"Sec. 53-230.   KEEPING A HOUSE OF ILL-FAME OR A DISORDERLY HOUSE.   Any person who keeps a house which is, or is reputed to be, a house of ill-fame, or which is resorted to, or is reputed to be resorted to, for the purposes of prostitution or lewdness, or a house which is, or is reputed to be, a house or place of assignation . . . or keeps or maintains a disorderly house . . . [shall be punished]."

Hartford, and that the premises operated under a restaurant liquor permit issued by the state of Connecticut.

The defendants have withdrawn their claim that scienter is an essential element of the offense charged in respect to § 53-230. See *State* v. *Gaetano,* 96 Conn. 306, 318. They have also withdrawn the assignments of error directed toward the admission of conversations between the members of the Hartford vice squad and female frequenters at the defendants' place of business. Their withdrawal of these assignments of error, however, relates only to the court's rulings in respect to § 53-230. In withdrawing the assignments of error, the defendants probably have in mind rulings on the subject appearing in cases such as *Cadwell* v. *State,* 17 Conn. 467, 472; *State* v. *Anderson,* 82 Conn. 111, 114; *Morse* v. *Brown,* 83 Conn. 550, 553, and *State* v. *Gaetano,* supra. See Wharton, Criminal Evidence (12th Ed.) §§ 222, 275; 24 Am. Jur. 2d, Disorderly Houses, § 18. For competency of evidence relating to the character of female frequenters of a disorderly house and of their conversations, see *State* v. *McGregor,* 41 N.H. 407; of arrests and convictions for prostitution of female frequenters of disorderly houses, see *Harwood* v. *People,* 26 N.Y. 190; and of acts of unchastity of women who resort to such places, committed elsewhere than on the premises in question, see *Beard* v. *State,* 71 Md. 275.

The only substantial questions on the appeal relate to rulings on evidence and certain of the court's conclusions. There is no serious dispute about the facts. The facts as found may be briefly summarized as follows: The defendant Oronzo was a permittee of a restaurant known as Al's Music Bar. Both he and his brother Albert, the codefendant, were majority shareholders in Malena, Inc., the

corporate backer of Al's Music Bar. There was a
space for dancing, and on three nights a week music
was provided by an orchestra. During the period
between April 5, 1964, and March 27, 1965, various
members of the Hartford police department's vice
squad frequently visited the premises and while
there were approached by women and invited to
engage in various types of sexual relations for
money. Other members of the vice squad observed
these activities. Following such a solicitation, an
officer would leave the premises in company with
the woman and shortly thereafter an arrest of the
woman for prostitution would follow. During this
period at least twenty (named) women were
arrested for prostitution as a result of their activ-
ities in the defendants' place of business, several or
more of them on more than one occasion. In addi-
tion other (named) women known to the police as
prostitutes were seen on the premises. Single males
were observed entering the place and later leaving
with female frequenters. Most of these females
were known by the police as streetwalkers and
prostitutes. During the many visits made by the
members of the vice squad, both defendants were
usually on the premises, and each was warned that
known prostitutes were frequenting the place. On
one occasion, four women were pointed out to Albert
as having been arrested for prostitution. On
another occasion, Oronzo was told by an officer that
he had the right to refuse admittance to girls who
used the place to pick up males and then left with
the males and later returned to engage in the same
activity. On occasion, Albert was seen sitting in a
booth with convicted prostitutes, and on one occa-
sion he was some four feet away from a booth and
observed a girl perpetrate an indecent act on an
officer. One of the females, a witness for the state,
who had been arrested and convicted for prostitu-

tion arising out of her activities at the defendants' place of business, was told by Albert to be careful when members of the vice squad were present, and he pointed out where they parked their cars. The place had a reputation as a house or place of assignation. The trial court concluded that each defendant was guilty of prostitution by assignation in violation of § 53-226, in that he permitted people to remain on the premises for purposes of lewdness or assignation. The court also concluded that the defendants were guilty of keeping a house of ill fame in violation of § 53-230, in that they kept a house which is, or is reputed to be, a house or place of assignation.

After the state had rested, the defendants moved to strike "any evidence pertaining to any one of the women who were testified to by Sergeants Rucci, Frank, Dee, Detectives Stelmach and—— Lieutenant Roach didn't testify to any." The defendants claim that evidence of arrests for prostitution of the women referred to was inadmissible because there was no evidence of conviction. The court denied the motion except as it applied to five of the women. But no objection was made to the court's treatment of the motion, and no exceptions were taken by the defendants. This being so, we have no occasion to review the court's ruling on the motion. Practice Book § 226; Maltbie, Conn. App. Proc. § 147.

The defendants unsuccessfully moved to strike the testimony of Officer Daley on the ground that the act of solicitation involving him took place off the premises. In support of their contention, they cite *State* v. *Curtis,* 146 Conn. 365, 370, to the effect that an act of lewdness under § 53-226 must take place indoors. In the instant case, the officer was leaving the premises when a girl (named) in the last booth followed him out "and at the entrance way to

the building asked . . . [him if he] could afford twelve dollars." After discussing the price, she agreed to meet him at his car. The evidence was offered to establish the character of the activities occurring in the place and was not inadmissible for the reasons claimed by the defendant, since under all the circumstances it cannot be said that the continuity of events leading up to the solicitation and the actual solicitation itself took place other than on the premises. The evidence tended to show that the woman was in the place for the purpose of assignation, that is, as defined by § 53-226, "the making of any appointment or engagement for prostitution or lewdness."

The defendants also assign error in the admission of certain evidence relating to the general reputation of the defendants' place of business. An officer testified that he had known the establishment for two years, or since its purchase by the defendants, and during this period had checked it at least two or three times a week and had arrested women who resorted to the place on the ground of prostitution. He was then asked if he knew the general reputation of the place, and he answered, "The reputation of the place is that of a hangout of prostitutes and assignators." Since the defendants neither objected nor took an exception to this testimony, we have no reason to review it. Practice Book § 226; Maltbie, Conn. App. Proc. § 147. See cases cited above relating to competency of evidence offered for the purpose of proving reputation.

The defendants assign error in the court's rulings on certain evidence as those rulings related to § 53-226. The evidence consisted of conversations between the police and the solicitors (named) on the defendants' premises. The state claimed a violation of the statute in that the defendants permitted

persons to remain on their premises for purposes of lewdness and assignation as defined by § 53-226 and that the testimony was offered, not for the truth of the matter, but only to show the use to which the premises were put. The defendants claimed that the evidence was hearsay. Such testimony was admissible as evidence of verbal acts, not to establish the truth of the facts related but to establish what would amount to the activities described in the information. "The evidence is admitted, not as an exception to the hearsay rule, but because it is not within the rule." *State* v. *Tolisano,* 136 Conn. 210, 214; 1 Wharton, Criminal Evidence (12th Ed.) § 257.

The defendants further assign error in the court's conclusions relating to § 53-226 "without evidence." Strictly, such assignments do not present a reviewable question of law. *City Bank & Trust Co.* v. *Ruthinian Greek Catholic Church,* 102 Conn. 609, 610. We assume that the attack is made on the ground that the conclusions are not supported by the subordinate facts. In their argument and brief, the defendants contend that scienter is an essential element and that the subordinate facts "negative scienter." The word "permits" must be construed according to its approved usage. General Statutes § 1-1. Used in this sense, it means "1. to allow; consent to; tolerate." Webster, New World Dictionary (College Ed.). To "permit" means suffering or allowing without interference or prohibition. *Territory* v. *Stone,* 2 Dak. 155. It implies knowledge. *State* v. *Cooke,* 130 Ore. 552. In that posture of the case, the court found that during the period in which the activities in question were occurring and arrests were being made, an officer on the premises pointed out four women (named) to Albert and told him they had all been arrested for prostitution; that both Albert and Oronzo were warned by

an officer that there were prostitutes on the premises; that single men came in and left with females; that Oronzo was advised by an officer that he should refuse admittance to girls who were coming in, picking up men, leaving with them and later returning to engage in the same activity; and that one of the girls, a witness, talked with Albert several times about the vice squad and he told her to be careful and pointed out to her the lot where members of the vice squad parked their cars. On such facts as these and the fair inferences to be drawn therefrom, the finding adequately supports the conclusion that the defendants permitted acts of assignation on their premises; and knowledge by them that such illicit acts were occurring was implicit in that conclusion.

The defendants further assign error in the court's conclusion as it relates to § 53-230. It should be pointed out initially that the defendants were charged with "keeping a house of ill-fame . . . 53-230." The judgment file indicates that the defendants were found guilty of "keeping house of ill-fame." The court concluded, however, that the defendants were guilty of "keeping a house of ill-fame . . . in that they kept a house which is or reputed to be, a house or place of assignation." Section 53-230 contains two independent clauses, one relating to a house of ill fame and one relating to a house of assignation. Each is a separate and distinct interdict. The syntactical arrangement lends itself to the principle of statutory construction "that, if possible, no clause, sentence or word shall be superfluous, void or insignificant." *Fenwick v. Old Saybrook,* 133 Conn. 22, 28. Courts must presume that the legislature had a purpose for every sentence, clause, or phrase in a legislative enactment. *McAdams v. Barbieri,* 143 Conn. 405, 419. It is unnecessary, however, to determine any

distinction in the statutory meaning intended by each clause, for the judgment file controls and not the finding. *Harris* v. *First National Bank & Trust Co.,* 139 Conn. 749, 752; *Phoenix Ins. Co.* v. *Carey,* 80 Conn. 426, 433; *Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 625. The defendants contend that without a finding of actual illicit sexual relations committed on the premises, they could not be lawfully found guilty of keeping a house of ill fame. "[B]y the phrase 'house of ill-fame,' as used in our statutes, is ordinarily meant a bawdy-house or brothel . . . ." *McAlister* v. *Clark,* 33 Conn. 91, 92. "Bawdy house" and "house of ill-fame" are synonymous terms denoting the fact of promiscuous illicit sexual intercourse or lewdness thereat. *State* v. *Lee,* 80 Iowa 75; *State* v. *Boardman,* 64 Me. 523; *State* v. *Smith,* 29 Minn. 193; *State* v. *Baldino,* 11 N.J. Super. 158. The various phrases synonymous with that of "house of ill-fame" all denote a resort of prostitution. 27 C.J.S., Disorderly Houses, § 4 (6). Lewdness means conduct of a lustful, lecherous, lascivious, or libidinous nature. *State* v. *Mitchell,* 149 Iowa 362, 365; see *State* v. *Jones,* 2 Conn. Cir. Ct. 698, 700. See Words and Phrases for other judicial constructions and definitions of "house of ill-fame" and "lewdness." Applying such definitions to the alleged violation, the allegation would be that the defendants kept a house or place which is, or is reputed to be, a house or place where acts of prostitution or lewdness were performed. While there was evidence tending to show a single instance of lewdness, ordinarily a single act is not enough to constitute lewdness under this statute. 24 Am. Jur. 2d, Disorderly Houses, §§ 7, 8. Since no actual acts of illicit sexual relations occurred on the defendants' premises but only an isolated act of lewdness, it cannot be said that the defendants were engaged in keeping a house or

place of ill fame, or in lewdness. See *State* v. *Gaetano*, 96 Conn. 306, 315, for the essential elements of the crime.

There is no error as to the first count; there is error as to the second count, the judgment is set aside as to the second count only and the case is remanded with direction to render judgment that the defendants are not guilty on that count.

In this opinion KINMONTH and KOSICKI, Js., concurred.

