[No. D002984. Fourth Dist., Div. One. July 8, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH ROBERT AMBROSE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Certified for publication with the exception of sections II through IV.

**COUNSEL**

Winifred Chernoff, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Holly D. Wilkens, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—Defendant Kenneth Robert Ambrose appeals his conviction on five counts of pimping (Pen. Code, § 266h)[2] and one count of pandering (§ 266i). He makes contentions of various evidentiary and instructional errors. We reject those contentions and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 1983 Ambrose began operating Aries Outcall, ostensibly an outcall massage and escort service. Persons contacting Aries by telephone were screened either by Ambrose or other employees and their phone numbers were taken. These numbers were then referred to women employed by Aries who would independently contact the customer and arrange to go to his location. Customers were allowed to charge a $60 "agency fee" and "tips" on Master Card, Visa or American Express credit cards. If the customer used a charge card, an 18 percent surcharge was added. Ambrose laundered all credit card charges through a framing company in exchange for the 18 percent.

---

[2]All statutory references are to the Penal Code unless otherwise indicated.

On four occasions between February and May 1983 police officers posing as customers phoned Aries, were screened, and received return calls from women employed by Aries. In each case, the officer was charged the $60 "agency fee," which went to Ambrose, and "tips" ranging from $80 to $160, which were retained by the woman. The women each explained to the officers which sex acts they would and would not perform in exchange for the tips after which they were arrested.

The thrust of Ambrose's defense was that he was unaware his employees were engaging in sex for money. Nonetheless, several of Aries' female employees admitted to having performed numerous sexual acts in the course of their employment and described circumstances from which Ambrose's knowledge of their conduct could be inferred. Wendy McQuillen testified that during approximately 5 months of work for Aries she made nearly 20 calls per week and engaged in sexual acts on 80 to 90 percent of those calls.

Gloria Ward helped Ambrose run the business in addition to making outcalls herself. She testified that Ambrose referred to Aries' customers as "tricks" and his employees as "whores" and that he made comments indicating that he knew the employees were engaging in sexual acts.[3] She also described one instance in which she made an outcall with Ambrose and performed sexual acts with three men while Ambrose watched.

Robbie Buxton was hired by Ambrose and Ward in early February. She testified that she made 30 to 40 outcalls during the period she worked for Aries and engaged in sex approximately 95 percent of the time. When she inquired about the credit card charges, Ambrose told her to assure her customers that no mention of sexual activities would appear on their charge slips. On one occasion, she expressed concern to Ambrose that one of her customers might not have been satisfied with her sexual performance but he reassured her that he had received no complaints.

## DISCUSSION

### I

■■■ Ambrose first contends the court erred in permitting four undercover police officers to testify as to what Aries employees said to them regarding

---

[3]Ward testified as follows: "Ah, well, later on there's one incident when the girl was on the phone. She dispatched a call to Wendy. Wendy went on the call, and when she got there, apparently there was a dispute between her and the customer. And the dispute was the fact Wendy was asking the guy to wear a rubber for oral sex, and now Bob—Robert Ambrose made a comment about her having—her making guys wear rubber boots—excuse me—for giving blow jobs."

which sexual acts would and would not be performed. He argues that these statements were hearsay and improperly admitted over his objection. The People rely primarily, as did the trial court, on the rule that statements of coconspirators made in furtherance of the conspiracy are not made inadmissible by the hearsay rule. (Evid. Code, § 1223.) Relying on *People* v. *Berger* (1960) 185 Cal.App.2d 16, 19-20 [7 Cal.Rptr. 827], Ambrose responds a prostitute cannot be an accomplice of her pimp and extrapolates from that principle that likewise a prostitute cannot conspire with her pimp.

We reject the extrapolation. *Berger* seems to be premised on the notion that where a defendant is charged with pimping, the exploited woman cannot aid and abet her own exploitation. Whether that notion retains validity or not, it does not detract from the fact that the functions of pimp and prostitute are, by definition, interrelated. A prostitute, while exploited, is not criminally blameless. She is guilty of prostitution and her pimp necessarily aids and abets her crime. Ambrose mistakenly assumes that the relevant conspiracy must be one of pimping; instead it is one of prostitution.

█ It is well established that the defendant need not be charged with conspiracy to apply the coconspirator exception to the hearsay rule. (*People* v. *Jourdain* (1980) 111 Cal.App.3d 396, 404 [168 Cal.Rptr. 702]; *People* v. *Morales* (1968) 263 Cal.App.2d 368, 374 [69 Cal.Rptr. 402].) █ Here, the People introduced more than sufficient evidence to establish a prima facie case that Ambrose and his female employees were engaged in a conspiracy to commit acts of prostitution. (See *People* v. *Saling* (1972) 7 Cal.3d 844, 854 [103 Cal.Rptr. 698, 500 P.2d 610].) Accordingly, the undercover officers' testimony was properly admitted.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Judgment affirmed.

Kremer, P. J., and Work, J., concurred.

---

*See footnote, page 136, *ante*.