[No. C052691. Third Dist. June 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE WARREN BOGAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts 1. and 3. of the Discussion.

## COUNSEL

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane Gillette, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**DAVIS, J.**—A jury convicted Dwayne Warren Bogan of single counts of pimping, pandering, conspiracy to solicit prostitution, and willful failure to appear. (Pen. Code, §§ 266h, subd. (a), 266i, subd. (a)(2), 182, subd. (a)(1), 1320.5, respectively.)[1]

On appeal, defendant contends (1) the trial court erroneously admitted, in violation of hearsay and confrontation standards, the testimony of two detectives regarding statements made by two suspected prostitutes; (2) his conspiracy conviction was not based on substantial evidence because a prostitute cannot be a coconspirator with her pimp; and (3) he was denied his constitutional right to a jury trial when the trial court imposed the upper term under count one (pimping). We will affirm the judgment of conviction but remand for an appropriate resentencing proceeding.

In the published portion of this opinion, we discuss defendant's second contention and conclude that a pimp can be convicted of a conspiracy to solicit prostitution with his prostitutes as the uncharged coconspirators.

### BACKGROUND

In light of defendant's contentions on appeal, it is unnecessary to provide a lengthy recitation of the facts. We provide the following background information.

---

[1] Hereafter, undesignated section references are to the Penal Code.

*Current Offenses*

On a February evening in 2005, Sacramento Police Department (SPD) Detective Ernest Lockwood was working street-level prostitution enforcement in an unmarked car. Posing as a "john," Detective Lockwood drove alongside a woman he suspected was a prostitute. After a brief conversation, the woman, later identified as Debrah Woods, entered the detective's vehicle.

Woods and the detective agreed on a price of $100 for a "half and half," which the detective had to pay up front. Then Woods made a call on her cell phone, saying she had a client and would be a while.

As they drove, Woods told the detective she was working with four other girls that evening. Once they reached a secluded area, Detective Lockwood gave his backup team the signal to arrest Woods on prostitution charges. Detective Lockwood seized Woods's cell phone, which registered the outgoing call she had made to phone number XXX-XXX-XXXX.[2]

Meanwhile, as part of the same enforcement operation, SPD Detective Brian Jensen was parked undercover when he noticed two scantily clothed women walking along the street. The two women got into a parked white van, followed by a third woman.

Later, at Detective Jensen's direction, the van was pulled over. Inside were the three women and defendant, who was the driver. Defendant was arrested; he carried $1,024 in cash. The bundle of money contained various denominations, including 32 $20 bills, an amount consistent with prostitution transactions.

During the search of the van, officers found three cell phones. One of the phones had the number XXX-XXX-XXX. That phone's memory showed the incoming call from Woods's cell phone that Detective Lockwood had overheard.

*Prior Acts*

On the night of January 21, 2005, Phoenix Police Detective Eric Murry was working street-level prostitution enforcement. While posing as a "john,"

---

[2] We have disguised this phone number for privacy purposes.

Detective Murry picked up a woman who was later identified as Christina Peters (also known as Jenkins). After they agreed on a price for her services, Peters immediately made a call from a cell phone and said she was with a client. The phone's memory showed an outgoing call that evening to XXX-XXX-XXX (defendant's phone).

Two days later, defendant posted bail for Peters.

## DISCUSSION

### 1. *Admissibility of Prostitutes' Statements**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 2. *Conspiracy to Solicit Prostitution*

Defendant contends that his conviction for conspiring to solicit prostitution with his prostitutes (count three) was not supported by substantial evidence because a prostitute cannot be a coconspirator with her pimp; therefore, a conspiracy could not legally exist here. We disagree. Although phrased as a substantial evidence contention, the issue is actually one of legal interpretation.

Conspiracy requires two or more persons agreeing to commit a crime, along with the commission of an overt act, by at least one of these parties, in furtherance of the conspiracy. (*People v. Swain* (1996) 12 Cal.4th 593, 600 [49 Cal.Rptr.2d 390, 909 P.2d 994]; see §§ 182, subd. (a)(1), 184.) A conspiracy requires (1) the intent to agree, and (2) the intent to commit the underlying substantive offense. (*Swain, supra,* 12 Cal.4th at p. 600.) These elements may be established through circumstantial evidence. (*People v. Herrera* (2000) 83 Cal.App.4th 46, 64 [98 Cal.Rptr.2d 911].) "They may . . . ' "be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy." ' " (*Ibid.*)

Defendant was convicted of conspiracy to solicit prostitution with his prostitutes as the uncharged coconspirators. (§§ 647, subd. (b), 182, subd. (a)(1).) The crux of defendant's argument is that a prostitute cannot be

---

*See footnote, *ante,* page 1070.

a coconspirator with her pimp unless the prostitute assists in the exploitation of another person. For this point, defendant cites *People v. Pangelina* (1981) 117 Cal.App.3d 414 [172 Cal.Rptr. 661] (*Pangelina*), *Williams v. Superior Court* (1973) 30 Cal.App.3d 8 [106 Cal.Rptr. 89] (*Williams*), *People v. Frey* (1964) 228 Cal.App.2d 33 [39 Cal.Rptr. 49] (*Frey*), and *People v. Berger* (1960) 185 Cal.App.2d 16 [7 Cal.Rptr. 827] (*Berger*).

■ These cited cases, for our purposes, stand for the principle that an act of prostitution, a misdemeanor, cannot be elevated to a felony merely by charging the act as a conspiracy by the prostitute and her pimp to commit prostitution. (*Pangelina, supra,* 117 Cal.App.3d at p. 422; *Williams, supra,* 30 Cal.App.3d at p. 14; see *Frey, supra,* 228 Cal.App.2d at p. 52; *Berger, supra,* 185 Cal.App.2d at pp. 19–20.) These cases recognize that the statutory scheme covering prostitution and related crimes reveals an affirmative legislative intent to punish prostitutes as misdemeanants and to punish pimps and panderers as felons. (*Pangelina, supra,* 117 Cal.App.3d at pp. 422, 424.) This is because prostitutes, "rather than being accomplices or coconspirators of those charged with felony pimping or pandering, . . . are criminally exploited by such persons." (*Id.* at p. 422.)

■ We recognize that the statutory scheme dealing with prostitution and related crimes, as a whole, reveals a legislative intent to punish prostitutes less harshly than the people who exploit them. However, we conclude that a pimp can be legally convicted of conspiracy to solicit prostitution with his prostitutes as the uncharged coconspirators. Three reasons support our conclusion.

■ First, the plain language of section 647, the solicitation statute, and section 182, the conspiracy statute, encompasses the offense of a pimp conspiring to solicit prostitution with his prostitutes. The introductory language of section 647 states that "[e]very person" who commits one of the listed acts, which includes solicitation of prostitution, is guilty of a misdemeanor. (§ 647.) Section 182, subdivision (a)(1), applies to "two or more persons" who conspire to commit "any crime." Both statutes apply equally to any person who violates them. Therefore, the legislative distinction between prostitutes as misdemeanants and pimps as felons is not adversely affected by convicting a pimp of felony conspiracy to solicit prostitution.[5] The

---

[5] We do note that in one of the cases upon which defendant relies, *Williams, supra,* 30 Cal.App.3d 8, the prostitute and her pimp were both charged with conspiracy to commit prostitution. On a petition by the prostitute, the appellate court dismissed the conspiracy charge as to both the prostitute and her pimp. The court focused on the prostitute's role in the conspiracy, with no analysis regarding the pimp's role.

We do not express any views on the viability of convicting a prostitute for conspiracy to solicit prostitution with her pimp.

Legislature has classified defendant's behavior (pimping and pandering) as felonious; the addition of a felony conspiracy charge to solicit prostitution reinforces that classification.

Second, there is California case law that recognizes the offense of a pimp conspiring to solicit prostitution involving one of his prostitutes. In *People v. Hobson* (1967) 255 Cal.App.2d 557 [63 Cal.Rptr. 320], the court upheld, with little analysis for our purposes, a pimp's conviction for conspiracy to solicit prostitution that involved the pimp, his prostitute, and others. (*Hobson, supra*, 255 Cal.App.2d at pp. 559–562; see *Williams, supra*, 30 Cal.App.3d at pp. 10–11.) The prostitute in *Hobson* was not formally charged with the conspiracy; the pimp and the "others" were.

More significantly, in *People v. Ambrose* (1986) 183 Cal.App.3d 136 [227 Cal.Rptr. 885] (*Ambrose*), the court expressly rejected the notion that a prostitute cannot conspire with her pimp to commit prostitution. (*Id.* at p. 139.) In *Ambrose*, the defendant was convicted of five counts of pimping and one count of pandering. (*Id.* at p. 137.) The *Ambrose* defendant was not charged with conspiracy, but the court upheld the admission of statements made by the defendant's suspected prostitutes under the coconspirator exception to the hearsay rule. (*Id.* at p. 139 [*Ambrose* also noted the "well established" principle that a defendant need not be charged with conspiracy to apply the coconspirator exception to the hearsay rule].) The *Ambrose* court rejected the defendant's contention, based on *Berger*, that because a prostitute cannot be an accomplice of her pimp, she also cannot conspire with her pimp. (*Ibid.*) The court reasoned that the "relevant conspiracy . . . is one of prostitution," not pimping, and noted that the prosecution had presented sufficient evidence to establish that the defendant and his suspected prostitutes were engaged in a conspiracy to commit acts of prostitution. (*Ibid.*)

Similarly, in the instant case, not only was defendant charged with pimping and pandering, but he was also charged with conspiracy to solicit prostitution. The underlying conspiracy, then, was one of soliciting prostitution, not pimping. Furthermore, none of the cases that defendant relies on analyzed the same issue that confronts us. The issue here is whether a pimp can be convicted of conspiracy to solicit prostitution when his coconspirators are his prostitutes. *Pangelina* and *Williams* involved situations where the prostitute herself was prosecuted for conspiracy to commit prostitution; and *Frey* and *Berger* involved pimps who were convicted of pimping, pandering, and/or conspiracy to pimp and pander, not conspiracy to commit or solicit

prostitution. (*Pangelina, supra,* 117 Cal.App.3d at p. 416; *Williams, supra,* 30 Cal.App.3d at p. 10; *Frey, supra,* 228 Cal.App.2d at pp. 38–39; *Berger, supra,* 185 Cal.App.2d at p. 17.) In the instant case, the pimp, not the prostitute, was prosecuted for conspiracy to solicit prostitution, not pimping. Therefore, we find *Ambrose* to be more persuasive and on point.

And third, upholding the conspiracy conviction in the present case furthers the rationale underlying the crime of conspiracy. The rationale for making conspiracy a crime, independent from the underlying substantive offense, is that " 'collaborative criminal activities pose a greater potential threat to the public than individual acts.' " (*People v. Alleyne* (2000) 82 Cal.App.4th 1256, 1261 [98 Cal.Rptr.2d 737], quoting *People v. Tatman* (1993) 20 Cal.App.4th 1, 8 [24 Cal.Rptr.2d 480].) In *Williams,* the court expressly rejected the defendant's argument that conspiracy to commit prostitution is no more serious than the actual act of prostitution. (*Williams, supra,* 30 Cal.App.3d at p. 11.) Said *Williams:* "Some of the sordid aspects of the commercial exploitation of prostitutes are too well known to require the citation of any authority." (*Ibid.*)

In the instant case, an agreement between defendant and his prostitutes made it more likely that they would commit the underlying offense. The group could pressure a reluctant individual into going through with the plan, and it would be difficult for that individual to convince the rest of the group to abandon their plans. The increased danger posed by this type of collaborative criminal activity reasonably justifies upholding the conspiracy conviction in the present case.

We conclude that a pimp can be convicted of a conspiracy to solicit prostitution with his prostitutes as the uncharged coconspirators. Consequently, we uphold defendant's conviction for count three.

3. *Imposition of Upper Term**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

* See footnote, *ante,* page 1070.

### DISPOSITION

The judgment of conviction is affirmed. The sentence for count one (pimping) is vacated and the case is remanded to the trial court for an appropriate resentencing proceeding on that count.

Blease, Acting P. J., and Raye, J., concurred.

On July 6, 2007, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 10, 2007, S154837.