Filed 9/11/20  P. v. Robinson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER LEE ROBINSON,<br><br>    Defendant and Appellant. | F077893<br><br>(Super. Ct. No. F18902266)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Kristin Traicoff, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A jury convicted defendant Christopher Lee Robinson of corporal injury upon a cohabitant in violation of Penal Code section 273.5, subdivision (a) after he stabbed the

victim in the neck with a comb. On the second day of trial, a juror called in sick. Over defendant's objection, the trial court discharged the juror and replaced her with an alternate. On appeal, defendant argues the court reversibly erred in discharging the juror.

We affirm the judgment.

## FACTUAL BACKGROUND

Delana L. was temporarily living with defendant and his mother when defendant told her she needed to move out. Delana and defendant verbally argued as she packed her belongings. According to Delana's cousin, Nicole, defendant was saying "horrible things" to Delana. While they were outside packing the moving truck, Nicole told Delana not to go back into the house by herself. Delana went back inside.

While inside the bathroom, Delana bent over to pick up the rugs and, as she stood up, she was stabbed in the neck. She went outside, called 911, and reported to the dispatcher that defendant, her ex-boyfriend, had stabbed her in the neck with a pointy "rat" comb and she was bleeding. Delana asked the 911 dispatcher to send someone to "chaperone" because she was scared of getting hurt but wanted to finish moving her belongings out of the house.

Nicole saw Delana holding her neck when she walked outside, and Delana told Nicole defendant had stabbed her with a comb. Nicole noticed a puncture wound on Delana's neck where it appeared the comb had gone under her skin; the wound was actively bleeding and Delana was wiping it. According to Nicole, defendant followed Delana outside while yelling obscenities and denying he stabbed her. Nicole stepped in between defendant and Delana and told defendant to leave Delana alone.

Deputy Esteban Morones responded to the call. He took a statement from Delana in which she reported defendant had assaulted her. Delana told Deputy Morones that she and defendant had been verbally arguing, and then defendant stabbed her in the neck with a pointed-end rattail comb while they were in the bathroom. Delana pushed defendant and then ran outside and called 911. She stated she and defendant had previously dated

2.

for eight months and had been living together "on and off" for two months. Deputy Morones photographed a puncture wound on the right side of Delana's neck and the photographs were admitted at trial.

At trial, Delana recanted many of her previous statements. She testified she recalled getting "poked" in the neck when she stood up in the bathroom, but she did not know who or what poked her. She denied she was bleeding and she denied seeing a rattail comb or what or who "poked" her that day. She testified she had an artificial plant in the bathroom, and she had been poked by her artificial plants in the past. She only called 911 because Nicole threatened to call the police if she did not.

The People presented an expert witness who testified regarding "cycles of violence" and "power of control." He explained an abuse victim may not call the police on her abuser because she still loves him, or she may fear retaliation by the abuser if he is released. He noted a victim may recant prior accusations against an abuser at trial for the same reasons. He testified it is very common for victims of domestic violence to downplay or deny instances of abuse and to blame themselves. The court instructed the jury it could consider this evidence in evaluating Delana's credibility but that it was not evidence defendant committed any of the crimes charged against him.

The defense presented one witness at trial, defendant's daughter, Dori Robinson. Dori testified she helped Delana move on the day of the incident and did not witness Delana and defendant argue physically or verbally that day. She recalled having a clear view of the bathroom and seeing Delana bend over and then stand up. Delana did not report being injured when she stood up or say anything about being "poked" until "an hour or two later." Dori also did not see a comb in the bathroom after learning about Delana's injury. However, she remembered there were numerous plants in the bathroom that had injured Dori "plenty of times."

The jury convicted defendant of one count of corporal injury on a cohabitant, spouse, or someone in a former dating relationship in violation of Penal Code section

3.

273.5, subdivision (a), and the court sentenced defendant to six years' imprisonment, the middle term doubled based on defendant's strike prior.

## DISCUSSION

In his sole issue on appeal, defendant contends the court abused its discretion by replacing a sick juror midtrial with an alternate.

## I.     Relevant Background

On the first day of testimony, Juror No. 6 submitted two notes to the court asking questions about aspects of the evidence.  In the first note, she asked whether Delana's hair was tied up during the incident.  Both counsel then asked Delana this question, and she responded that her hair was pulled back in a ponytail.  In the second note, Juror No. 6 asked whether Nicole, Delana's cousin, recalled if all the plastic plants were removed before the 911 call, or whether additional plastic plants were removed after the 911 call.  Both counsel asked Nicole additional questions related to the juror's question.  Nicole testified she believed all the plastic plants had been removed from the house before the incident.

Shortly before the first day of testimony concluded, the court advised the jury the prosecution had one additional witness to present the next day before resting.  The court further noted it was highly likely the jury would "have all of the evidence by tomorrow morning and pretty likely that [the parties would] be arguing and getting the case to [the jury] tomorrow afternoon."

The next day, a Friday, Juror No. 6 left the court a voicemail at 3:00 a.m.  The court notified both parties and stated it believed it was some kind of gastrointestinal issue.  The court noted its understanding that the evidence was potentially going to conclude that day.

Defense counsel asked the court to "be dark" that day and stated it was his understanding Juror No. 6 informed the court she would be available to return on

4.

Monday. Defense counsel noted that "[a]ll along from the outset of this trial we have informed potential jurors that this could go into Tuesday," and they "would conclude by Tuesday" given that there were potentially only two or three witnesses left. Defense counsel argued that if they "were to come back on Monday for this juror who has already invested some time into this and clearly has paid very close attention to testimony demonstrated by the fact that she submitted two notes to the Court during the evidence, [they] would still be ready to close and submit the case to the jury on Tuesday as originally planned from the outset." He acknowledged that they "have alternates for a reason," but asserted a one-day delay did not justify seating one, "especially knowing that this juror is able to come back on Monday."

The court responded that Juror No. 6 "believes she could be here on Monday," but the court had "no idea what she is sick with or whether that's actually something that would work." The prosecutor agreed with the court and asked the court to proceed with trial that day.

The court decided to discharge Juror No. 6 and seat an alternate because the trial was likely going to conclude that day and there were "13 jurors in the back ready to go." In so holding, the court noted the reason they have alternates is because of the possibility of a juror not being able to be there.

## II. Standard of Review and Applicable Law

A court's decision to replace a juror with an alternate is reviewed for abuse of discretion. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1409.) By statute, a trial court may discharge any juror who "becomes ill, or upon other good cause shown to the court[,] is found to be unable to perform his or her duty." (Pen. Code, § 1089; see *People v. Duff* (2014) 58 Cal.4th 527, 560.) Discharge of a juror under section 1089 is committed to the discretion of the trial court, and we review whether the grounds for such discharge appear in the record as a "demonstrable reality." (*People v. Thompson* (2010)

5.

49 Cal.4th 79, 137.) "The demonstrable reality test entails a more comprehensive and less deferential review. It requires a showing that the court as trier of fact *did* rely on evidence that, in light of the entire record, supports its conclusion that [the basis for removal] was established." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052–1053; accord, *People v. Williams* (2015) 61 Cal.4th 1244, 1262.)

"'Once a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty "to make whatever inquiry is reasonably necessary" to determine whether the juror should be discharged.'" (*People v. Leonard*, *supra*, 40 Cal.4th at p. 1409; accord, *People v. Duff*, *supra*, 58 Cal.4th at p. 560 [trial court "'has an affirmative obligation to investigate'"]; *People v. Bell* (1998) 61 Cal.App.4th 282, 287 [court must "make a reasonable inquiry to determine whether the person in question is able to perform the duties of a juror"].) But the scope of the investigation, like the decision to discharge a juror, is "'committed to the sound discretion of the trial court.'" (*People v. Duff*, *supra*, at p. 560.)

III.    **Analysis**

Defendant contends the court abused its discretion in discharging the juror because it "was not aware of facts that constituted good cause" to support the discharge and it "failed to make any inquiry to ascertain such facts." Rather, the only information the court had was that Juror No. 6 was ill on a Friday and believed she could return to court the following Monday. He contends the juror "did not express uncertainty … about the expected length of her illness nor express that she had an illness that was so serious that the court could reasonably conclude she would require more than three days to convalesce." He argues the error was structural and no showing of prejudice is required. Alternatively, he contends he was prejudiced by the juror's excusal. The People respond the trial court did not abuse its discretion by dismissing the juror, and even if it did, any error was harmless because defendant was tried by a fair and impartial jury. Further, they

6.

contend the error was not structural because the alternate juror observed the same evidence and received the same instructions. We agree with the People.

Here, the court had good cause to discharge Juror No. 6 in light of her representation that she was sick and unable to attend what was scheduled to be the last day of a two-day trial. The record reflects the trial court relied on the juror's representation that she was ill in determining she was unable to proceed. Indeed, the court considered this fact coupled with its uncertainty that the juror would be able to return on Monday, that the evidence was set to conclude that day, and that there were jurors and alternates waiting in deciding to discharge Juror No. 6. There is nothing in the record to cast doubt on the court's valid, statutory reason for the removal. Thus, we cannot conclude it abused its discretion in discharging Juror No. 6.

Additionally, though it may have been preferable for the court to have spoken directly to the juror, we also cannot conclude the court abused its discretion in failing to conduct a further inquiry. Here, the juror left a voicemail for the court explaining she would be absent, the reason for her absence, and the length of time she would be unavailable for jury service. The court relayed the information on the record to both counsel. It then relied upon the juror's representations, the stage of the proceedings, and the potential inconvenience to the jurors and alternates in concluding it would excuse Juror No. 6. Defense counsel never asked the court to contact the juror directly or to investigate further or objected on this ground. We cannot say on this record the court's decision "exceeded the bounds of reason or was manifestly unjust. [Citation.]" (*People v. Dell* (1991) 232 Cal.App.3d 248, 256; accord, *People v. Leonard*, *supra*, 40 Cal.4th at pp. 1409–1410 [rejecting argument court conducted inadequate investigation because it did not speak directly to juror and concluding message left on court's answering machine explaining juror's absence and length of time he would be unavailable for jury service was sufficient to justify removing the juror; "[n]o further inquiry was required"]; see *People v. Landry* (2016) 2 Cal.5th 52, 88–89 [no abuse of discretion to discharge sick

juror when court did not know when she would be able to return and was about to enter final phase of closing argument and instruction when juror called in sick]; *People v. Duff*, *supra*, 58 Cal.4th at p. 560, fn. 15 [court not required to call sick juror into courtroom to establish illness]; *People v. Bell*, *supra*, 61 Cal.App.4th at pp. 288–289 [court made sufficient inquiry and did not abuse its discretion in dismissing juror after conferencing with parties and considering that timing of juror's return was uncertain and jurors, alternates, and witnesses were waiting]; *People v. Dell*, *supra*, at p. 256 ["When the juror is not present in the courtroom it would appear unreasonable to require the sick … juror to come into the courtroom in order to hold a hearing to substantiate the factual basis for the juror's claim of illness"].)

Additionally, contrary to defendant's contentions, the court was not required to continue the trial to the following Monday. Rather, "[w]hether a juror's illness can best be accommodated by a continuance or replacement with an alternate is a matter committed to the trial court's discretion." (*People v. Duff*, *supra*, 58 Cal.4th at p. 561.) Here, the trial court weighed the arguments for and against discharging Juror No. 6. It concluded Juror No. 6's illness could best be accommodated by replacing her with an alternate considering that the evidence was set to conclude that day, the other 11 jurors and two alternates were present and ready to proceed, and it was not certain Juror No. 6 would actually be able to attend on the following Monday. We cannot conclude the court's decision was an abuse of discretion. (See *People v. Duff*, *supra*, at pp. 560–561, fn. omitted ["demonstrable reality test does not demand of trial judges confronted with sick jurors that they elicit conclusive proof of the length of future incapacitation; judges are lawyers, not doctors. Nor does it demand that incapacitation exceed some preset length; in the right circumstances, an absence of a day or less may warrant excusal"].)

Irrespective, even if we were to conclude the court abused its discretion in dismissing Juror No. 6, we cannot conclude defendant was prejudiced. In so concluding, we reject defendant's argument the alleged error here is structural; rather, we find

8.

defendant's cited authorities inapposite. (See *Nguyen v. United States* (2003) 539 U.S. 69, 81–83 [concluding unauthorized judge sitting on Ninth Circuit panel that decided defendant's appeal was reversible error]; *Rose v. Clark* (1986) 478 U.S. 570, 579 [concluding erroneous instruction that impermissibly shifted burden of proof on malice was not structural and noting "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis"]; *United States v. Curbelo* (4th Cir. 2003) 343 F.3d 273, 283–285 [structural error to proceed with 11 instead of 12 jurors without good cause or defendant's consent and in violation of Fed. Rules of Crim. Proc.]; *United States v. Essex* (D.C. Cir. 1984) 734 F.2d 832, 838–845 [court erred in permitting 11 of 12 jurors to deliberate and return a verdict despite not finding good cause to excuse the 12th juror, and error was reversible because defendant's substantial right to a unanimous jury of 12 jurors was violated].) Rather, because defendant does not claim that any of the jurors who ultimately served were biased against him, his constitutional right to a fair and impartial jury was not impaired. Thus, we review any alleged error in excusing Juror No. 6 for prejudice under *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Bowers* (2001) 87 Cal.App.4th 722, 735.) Accordingly, we must decide whether there is a reasonable probability the juror's excusal affected the verdict. (*People v. Watson*, *supra*, at p. 836.)

We cannot conclude the record before us establishes prejudice. Nothing in the record indicates Juror No. 6 was leaning towards one side or the other when she was excused from service. While Juror No. 6 asked about Delana's hair and the presence of artificial plants in the bathroom, neither of these questions suggested Juror No. 6 was more likely to return a verdict in favor of defendant. (Cf. *People v. Hamilton* (1963) 60 Cal.2d 105, 128, disapproved on other grounds in *People v. Morse* (1964) 60 Cal.2d 631, 649 [finding defendant was prejudiced by dismissal of juror who disclosed she opposed verdict imposing death penalty and was considering probability of life sentence because

9.

her dismissal was tantamount to loading jury with those who might favor death penalty]; *People v. Bowers*, *supra*, 87 Cal.App.4th at pp. 735–736 [finding defendant was prejudiced by dismissal of juror who was "lone holdout juror who steadfastly held to his belief defendant was not guilty throughout the course of deliberations and until he was discharged"].) Furthermore, there is nothing to suggest the alternate juror was less qualified to serve than the dismissed juror or that the trial was rendered fundamentally unfair as a result of Juror No. 6's excusal. The alternate juror was examined by both sides on voir dire, accepted as an alternate, heard all the evidence, and participated in deliberations. On this record, we cannot conclude defendant was prejudiced. (See *People v. Dell*, *supra*, 232 Cal.App.3d at p. 256 [defendant could not reasonably argue she was prejudiced when an alternate replaced a sick juror because "[a]lternates are selected from the same source, in the same manner, with the same qualifications and are subject to the same challenges. Alternates have an equal opportunity to observe the entire proceedings and take the same oath as the regular jurors"].)

We reject defendant's contention.

## DISPOSITION

The judgment is affirmed.


PEÑA, J.

WE CONCUR:


FRANSON, Acting P.J.


DESANTOS, J.

10.