Filed 3/11/25  P. v. White CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COLUMBUS WHITE,<br><br>    Defendant and Appellant. | D082503<br><br><br><br>(Super. Ct. No. SCD293806) |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Columbus White appeals from his convictions for human trafficking, pimping, and pandering.  White claims that text messages between the

prostitutes and him were inadmissible hearsay, and the People's expert improperly relied on the truth of those texts. Finding the texts admissible under hearsay exceptions, we disagree and affirm the conviction.

## II. BACKGROUND

In 2023, the Office of the San Diego District Attorney charged White with human trafficking, pimping, and pandering of minor Maria S. between January 23, 2022, and January 31, 2022 (Pen. Code, §§ 236.1, subd. (c)(1), 266h, subds. (a) & (b)(1), 266i, subds. (a)(1) & (b)(1); counts 1–3); pimping and pandering of Gabriella J. between January 8, 2022, and February 21, 2022 (*id.*, §§ 266h, subd. (a), 266i, subd. (a)(1); counts 4–5); pimping and pandering of Juanica L. between February 2, 2022, and February 22, 2022 (*id.*, §§ 266h, subd. (a), 266i, subd. (a)(1); counts 6–7); and pimping and pandering of Marketta G. between February 17, 2022, and February 21, 2022 (*id.*, §§ 266h, subd. (a), 266i, subd. (a)(1); counts 8–9).

At White's trial, the trial court admitted text messages between White and the four prostitutes as operative facts.[1] The trial court instructed the jury that the texts may not be considered "as evidence for the truth they disclose." The trial court explained that instead the jury may consider the texts only to provide context for White's statements and to determine whether the texts "are part of the practice of engaging in the" charged offenses.

---

[1] "Written or spoken words offered as original evidence rather than for their truth are generally referred to as 'operative facts,'" (*People v. Smith* (2009) 179 Cal.App.4th 986, 1003) or "verbal acts" (*People v. Dell* (1991) 232 Cal.App.3d 248, 262 (*Dell*)).

The following are examples of the admitted texts:[2]

From January 28, 2022:

| | |
|---|---|
| Maria: | Love you daddi |
| White: | Call me with some money bitch or don't fuck with me at all |
| [¶] . . . [¶] | |
| Maria: | I only caught one date |
| White: | Ok what exactly street you are on |
| White: | If you can catch another one that'll be fine |
| White: | Ask somebody what street you on |
| White: | Finish the first date |
| Maria: | I'm trying that trick from earlier said he gots a friend |

From January 28, 2022:

| | |
|---|---|
| White: | If he trying to have you do some extra with that stripper pole have him pay you more |
| Gabriella: | Okay and yeah he already asking for more time |
| White: | Ok Make sure you get more money |
| Gabriella: | I got you |
| Gabriella: | I got 500 |
| White: | Nice |
| Gabriella: | He want till 6[:]40 |
| Gabriella: | 6[:]30 |
| Gabriella: | But imma try n get em hom faster |
| White: | Remember every condo you use that's more money |
| Gabriella: | I know and i got another 120 |
| White: | Nice |

---

[2]    Over 100 pages of texts were admitted, but White only cites to those recited by Detective Daniel Dierdorff when he testified.  We therefore limit our analysis to those texts.

From February 18, 2022:

| | |
|---|---|
| Gabriella: | What i said was Someone wants a date for 120 at that address I don't know if you want to go there or not for that |
| Gabriella: | He got it in cash so |
| Gabriella: | App |
| White: | Cash app |
| Gabriella: | Yeah |
| White: | OK give him my cash app to cash app me |
| Gabriella: | What you mean she gon have to give it to him ain't no one finna send the money before she even shows up |
| White: | Text me his number and I'm here already |
| [¶] . . . [¶] | |
| White: | Tell him she's getting dropped off by a Uber at the gate |
| Gabriella: | Tell her to go in the gate |
| Gabriella: | She needs to go he keeps calling |
| White: | [Sends Marketta a photo of his Cash App account.] |
| White: | U ok [to Marketta] |
| White: | Got it [to Gabriella] |
| Gabriella: | K |
| White: | Set up some more good job [to Gabriella] |
| White: | Got it [to Marketta] |

From February 19, 2022:

| | |
|---|---|
| Juanica: | 100$ |
| Juanica: | And the room was 104 Didn't eat at all yesterday And then today I did one date hand jb quick lasted 6 min for 80$ |
| White: | I'm still sick laying down but I'm going to get up |
| Juanica: | And I'll be putting the money up but won't call till it's more that |

4

White: Ok good job keep it up I'm a keep posting you to the top

Dierdorff testified as an expert in human trafficking and pimping, defining the terminology used in the text messages. He explained that prostitutes commonly call their pimps "daddy," a "date" is the time a prostitute spends with a sex buyer, a "trick" is a sex buyer, and "condo" refers to condom.

Dierdorff opined that the texts were consistent with a pimp and prostitute relationship. As Dierdorff described, pimps provide prostitutes protection, staying in the area of the dates and communicating by text. Pimps also control their prostitutes, using various methods such as not letting them eat, and they provide their prostitutes with a specific number of condoms as a tracking mechanism for how much money should have been made.

Payment for sexual services, according to Dierdorff, is commonly made through mobile applications such as Cash App and Venmo. White's Cash App records showed that a "Gabby" sent White approximately $2,700 and White sent her approximately $1,000 around the time of White's offenses in this case. Some of those transactions had trophy emojis, which, according to Dierdorff, indicate that a sex act occurred. Gabriella also texted White a screenshot of a transfer she received through Venmo. During the February 18, 2022 text exchange quoted above, after White sent Marketta his Cash App information and before he texted "[g]ot it," White received $120 to his Cash App account.

Dierdorff also testified that prostitutes use escort advertisements, such as the website Megapersonals, to attract clients. Dierdorff discovered postings on Megapersonals for Gabriella, Juanica, and Marketta. Each contained the exact same language advertising prostitution services. White

5

had a screenshot of Marketta's Megapersonals add on his phone. White also had pictures of Juanica and Gabriela's driver's licenses on his phone, which is significant because proper identification is required to post adds on Megapersonals. When White wrote, "I'm a keep posting you to the top" in the February 19, 2022, text to Juanica quoted above, Dierdorff found it significant because escort ads are often reposted to increase their visibility.

The trial court also admitted numerous videos of White with Maria and Gabriella containing references to pimping. For example, one of the videos depicted White and Maria singing along to a song about pimping while money emojis fell across the screen. In another, White tells Gabriella "[s]taying down for my crown," which means remaining loyal to a pimp.

Additional evidence against White included several officers' observations of White, Maria, and Gabriella. On January 26, 2022, police observed Maria and Gabriella standing outside the Main Street Motel in Barrio Logan, which is a common area for prostitution. Maria and Gabriella were wearing revealing clothing and waiving at passing cars, as prostitutes often do. Maria had condoms in her possession. Gabriella had a tattoo of "Mac $mooth" on her chest. Mac $mooth is White's nickname. Prostitutes frequently tattoo their pimp's name on their bodies.

White was parked nearby, and after the police contacted Maria and Gabriella, he appeared to record the incident. White then drove into the parking lot where officers were detaining Maria and Gabriella.

On January 31, 2022, officers observed Maria in the same general area about a block away. Maria was standing in the roadway waiving at cars as they passed by, and officers detained her on suspicion of loitering to commit prostitution. White was parked approximately 50 feet away, and he drove by

and observed Maria's detention. Records from Maria's phone showed that she and White called each other 247 times between January 23 and 31, 2022.

White rested without presenting any affirmative evidence, and the jury convicted him of all nine counts. The trial court sentenced White to 24 years in prison.[3] White timely appealed.

## III. DISCUSSION

White argues the trial court abused its discretion in admitting the text messages and allowing Dierdorff to provide his opinion based on those texts. He claims the texts were inadmissible hearsay, and their truth was critical to the prosecution's case. White contends Dierdorff improperly relied on the texts' truth, and the trial court's limiting instruction did not prevent the jury from considering the texts as true.

White bases his arguments on *People v. Sanchez* (2016) 63 Cal.4th 665, 682, where the California Supreme Court held, "[w]hen an expert relies on hearsay to provide case-specific facts, considers the statements as true, and relates them to the jury as a reliable basis for the expert's opinion, it cannot logically be asserted that the hearsay content is not offered for its truth." The court determined that "the jury must consider expert basis testimony for its truth in order to evaluate the expert's opinion," and hearsay "problems cannot be avoided by giving a limiting instruction that such testimony should not be considered for its truth." (*Id.* at p. 684.)

---

[3]    White's sentence consisted of 16 years for count 1, plus two years and eight months for each of counts 4, 6, and 8. The trial court stayed White's sentence on counts 2, 3, 5, 7, and 9.

*A.      Standard of Review*

We review a trial court's rulings on admissibility of evidence for abuse of discretion.  (*People v. Zavala* (2013) 216 Cal.App.4th 242, 249.)  However, "we review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Camacho* (2022) 14 Cal.5th 77, 123–124.)

*B.      Analysis*

A prostitute's statements may be admitted as operative facts to prove pimping and pandering charges.  (*Dell*, *supra*, 232 Cal.App.3d at p. 262.)  "In these types of situations, . . . the significance is in the fact the words were uttered at all." (*Ibid*.)  For example, Maria's text referring to White as "daddi" was not admitted to prove that White was Maria's father.  Nor was it necessary to prove that Juanica actually received $80 for the "date" she described on February 19, 2022.  These texts were relevant because the declarants were using common prostitution terminology, and their communications provided direct evidence of a prostitution/pimp relationship.  Consequently, the truth of these texts was not essential to the prosecution's case, and the texts were admissible as operative facts.

Dierdorff did not definitively state whether he considered the statements in the text messages as true when rendering his opinion.  Without directly addressing the messages' truth, Dierdorff generally described certain terminology and opined that the text messages were consistent with a pimp and prostitute relationship.  Nonetheless, even if we assume Dierdorff accepted the texts as true, and that the jury did as well, we see no error.

As explained in *Sanchez*, experts may rely on "hearsay properly admitted under a statutory hearsay exception." (*People v. Sanchez, supra,* 63 Cal.4th at p. 685.)  White's statements in the text messages meet

8

the party statement exception to the hearsay rule in Evidence Code[4] section 1220, under which "[a] defendant's own hearsay statements are admissible." (*People v. Davis* (2005) 36 Cal.4th 510, 535.)

The prostitutes' statements were also admissible using the coconspirator exception in section 1223, which allows admission of statements "made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy" if "made prior to or during the time that the party was participating in that conspiracy." (§ 1223, subds. (a) & (b).) White effectively concedes this exception applies except for a narrow issue regarding Maria.[5]

In response to the People's reliance on section 1223, White only argues the coconspirator exception is inapplicable to Maria because she was a minor. White claims Maria was statutorily immune from prosecution for prostitution based on a 2016 amendment to Penal Code section 647; therefore, she could not have participated in a conspiracy related to that offense. However, even when prostitutes are immune from being charged as coconspirators, they may nonetheless be treated as uncharged coconspirators acting with their pimp. (*People v. Brown, supra,* 14 Cal.App.5th at p. 335.) In these circumstances,

---

4      All undesignated section references are to the Evidence Code.

5      In any event, we have no trouble finding the coconspirator exception's requirements are satisfied. Prostitutes may be treated as uncharged coconspirators with their pimp. (*People v. Brown* (2017) 14 Cal.App.5th 320, 335.) The officers' observations of Maria, Gabriella, and White; White's statements in the texts; the photos and videos on White's phone; White's Cash App transactions; the Megapersonals advertisements; and the numerous calls between White and Maria provide "independent evidence to establish the prima facie existence of a conspiracy." (*People v. Calhoun* (2019) 38 Cal.App.5th 275, 319.) Further, the texts were between White and the four prostitutes while White was pimping them, and they were in furtherance of pimping and prostitution.

"it does not matter whether or not an uncharged coconspirator is prosecutable, or instead enjoys immunity, in determining the application of the coconspirator [hearsay] exception." (*Id.* at pp. 332–333.) Accordingly, immunity for prostitutes or human trafficking victims "does not preclude treating them as *uncharged* coconspirators for purposes of the coconspirator exception to the hearsay rule." (*Id.* at p. 335.) White's only defense to the coconspirator hearsay exception therefore lacks merit, and we find the prostitutes' texts admissible under that exception.

In sum, in addition to being operative facts, the text messages were also admissible under statutory hearsay exceptions. Consequently, both Dierdorff and the jury were permitted to consider the texts for their truth, and White has failed to show that reversal is warranted.

## IV. DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


KELETY, J.


10